UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re:<br><br>Thomas H. Vieregger dba dcs Gutters & Roofing; mem colorado gutterz, LLC; mem docs exteriors, LLC; mem dcs solar solutions, LLC; mem Ridgepoint Management Group, LLC; mem Eastland & Vierregger, LLC; ods Douglas County Seamless Gutter Co.<br><br>Debtors.<br><br>American Builders & Contractors Supply Co., Inc.,<br>Plaintiff<br><br>v.<br><br>Thomas H. Vieregger,<br>Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 10-11642-ABC<br><br><br><br><br><br><br><br><br><br>Chapter 7<br><br><br><br>Adversary Case No. 10-1243-ABC |

## PLAINTIFF'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Pursuant to Fed. R. Bankr. P. 7056 and Local Bankr. R. 7056-1, Plaintiff, American Builders & Contractors Supply Co., Inc. ("ABC"), by its attorneys, Andersohn Law Office, PC, moves this court for summary judgment against Defendant, Thomas H. Vieregger ("Vieregger"), and in support thereof states as follows:

### STATUTORY AUTHORITY FOR MOTION

Summary Judgment

1. Under Fed. R. Civ. P. 56, as applied to adversary proceedings pursuant to Fed. R. Bankr. P. 7056, "[s]ummary judgment is appropriate if the evidence presented by the parties demonstrates 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th

Cir. 2001).

2. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Jennings v. Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

3. The moving party "bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

4. "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

5. Summary judgment may be based on facts deemed admitted as a matter of law. *Sunergy Communities, Inc. v. Aristek Properties, Ltd.*, 535 F.Supp. 1327, 1332 (D. Colo. 1982).

6. In considering a request for summary judgment, the Court must "view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 892 (10th Cir. 2005).

7. "A fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Wright v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

8. A "mere ... scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable [trier of fact] could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)

## **PROCEDURAL BACKGROUND**

9. On January 29, 2010, Debtor Vieregger filed his voluntary petition under Chapter 7 in this Court.

10. On March 17, 2010, Plaintiff ABC filed its Complaint objecting to discharge of Vieregger's debt to ABC, pursuant to 11 U.S.C. § 523(a)(4). The Complaint was filed on Vieregger and Vieregger's attorney of record, F. Kelly Smith, via first class mail on March 18, 2010. (*See* Summons in an Adversary Proceeding and Certificate of Service, a true and correct copy of

which is attached as Exhibit D; *see also* the Certificate of Service attached hereto as Exhibit E.)

11. On May 26, 2010, Vieregger's debt was discharged by order of this Court.

12. On July 19, 2010, ABC served a Request for Admissions on Vieregger. (*see* Plaintiff American Builders & Contractors Supply Co., Inc.'s First Request for Admissions, Interrogatories and Request for Production of Documents to Defendant Thomas H. Vieregger, attached hereto as Exhibit A.) Vieregger has failed to respond to said Request, and now ABC brings this Motion.

13. The Court ordered that dispositive motions be filed on or before October 8, 2010, as stated in the Order Pursuant to Scheduling Conference Held June 16, 2010.

## SUMMARY JUDGMENT EVIDENCE

14. Plaintiff American Builders & Contractors Supply Co., Inc.'s First Request for Admissions, Interrogatories and Request for Production of Documents to Defendant Thomas H. Vieregger, a true and correct copy of which is attached hereto as Exhibit A.

15. Answer of Thomas H. Vieregger, a true and correct copy of which is attached hereto as Exhibit B.

16. Affidavit of Mick Walker, a true and correct copy of which is attached hereto as Exhibit C.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Parties

17. Plaintiff, ABC, is a material supplier, incorporated in Delaware. (Answer., Ex. B, ¶ 5.)

18. Defendant, Vieregger, was, at all times relevant to this motion, an officer, director, and owner of Douglas County Seamless Gutter Company, Inc. d/b/a DCS Gutters & Roofing. Inc. ("DCS"). (Answer, Ex. B, ¶ 6.)

Facts Deemed Admitted as a Matter of Law, pursuant to Fed. R. Civ. P. 36(a)

19. A party served with requests for admissions who does not timely answer those requests, is deemed to have admitted those facts contained in the admissions. *Bergemann v. United States*, 820 F.2d 1117, 1120 (10th Cir. 1987). See also Fed. R. Civ. P. 36 (2010) (stating, in relevant part, as follows: "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." This Rule is

applied in adversary proceedings, pursuant to Fed. R. Bankr. P. 7036.)

20. Pursuant to Fed. R. Civ. P. 5(b)(1), "if a party is represented by an attorney, service under this rule must be made on the attorney."

21. Under Fed. R. Civ. P. 5(b)(2)(C), a paper may be served by "mailing it to the person's last known address – in which event service is complete upon mailing."

22. F. Kelly Smith, Esq. represents Vieregger and has an office at 216 16th St., Ste. 1210, Denver, CO 80202. (Answer., Ex. B, Page 4.)

23. On July 19, 2010, ABC served Vieregger with Plaintiff American Builders & Contractors Supply Co., Inc.'s First Request for Admissions, Interrogatories and Request for Production of Documents to Defendant Thomas H. Vieregger by mailing same to F. Kelly Smith at 216 16th St., Ste. 1210, Denver, CO 80202. (Request for Admissions, Ex. A, Pg. 8.)

24. More than thirty days have passed since the Request for Admissions was served on Vieregger and ABC has not received answers to its Request for Admissions. (Walker Aff., Ex. C, ¶ 6.)

25. The admissions in ABC's Requests for Admissions are deemed admitted. Fed. R. Civ. P. 36(a)(3).

26. Vieregger made all decisions regarding payments made by DCS to its suppliers. (Request for Admissions, Ex. A, ¶ 2.)

<u>15335 E. Penwood Place</u>

27. ABC was DCS's sole supplier of roofing materials and fixtures for improvements made to 15335 E. Penwood Place, Aurora, CO 80015 ("Penwood Project"). (Request for Admissions, Ex. A, ¶ 4.)

28. In February 2009, DCS ordered and received materials listed on the following invoices:

|    | Invoice # | Amount | Ship To |
|----|-----------|--------|---------|
| a. | 4886468   | $ 249.91 | 15335 E. Penwood Place, Aurora, CO 80015 |
| b. | 4882112   | $ 3,782.46 | 15335 E. Penwood Place, Aurora, CO 80015 |
| c. | 4881837   | <u>$23,446.59</u> | 15335 E. Penwood Place, Aurora, CO 80015 |

    Total:     $27,478.96 (Request for Admissions, Ex. A, ¶ 3.)

29. In February 2009, ABC applied the following credit to DCS's account related to the Penwood Project:

      Credit #      Amount      Ship To
a.  4886156    -$490.76    15335 E. Penwood Place, Aurora, CO 80015
(Request for Admissions, Ex. A, ¶ 3.)

30. The amount of materials that ABC supplied DCS for the Penwood Project, less credits, was $26,988.20 ("Penwood Materials"). (Request for Admissions, Ex. A, ¶ 3.)

31. DCS was paid in full for the Penwood Materials. (Request for Admissions, Ex. A, ¶ 8.)

32. Vieregger made the decision not to pay ABC for the Penwood Materials. (Request for Admissions, Ex. A, ¶ 9.)

33. Neither DCS nor Vieregger maintained a separate record of account for the Penwood Project. (Request for Admissions, Ex. A, ¶ 10.)

<u>8624 Kim Ct.</u>

34. ABC was DCS's sole supplier of roofing materials and fixtures for improvements made to 8624 Kim Ct., Parker, CO 80134 ("Kim Ct. Project"). (Request for Admissions, Ex. A, ¶ 12.)

35. In February and March 2009, DCS ordered and received materials listed on the following invoices:

      Invoice #      Amount      Ship To
a.  4882395    $8,414.33    8624 Kim Ct., Parker, CO 80134
b.  4887102    $1,268.45    8624 Kim Ct., Parker, CO 80134

Total:    $9,682.78 (Request for Admissions, Ex. A, ¶ 11.)

36. In February 2009, ABC applied the following credit to DCS's account related to the Kim Ct. Project:

      Credit #      Amount      Ship To
a.  4883577    - $214.90    8624 Kim Ct., Parker, CO 80134
b.  4890936    - $188.35    8624 Kim Ct., Parker, CO 80134

Total:    - $403.25    (Request for Admissions, Ex. A, ¶ 11.)

37. The amount of materials that ABC supplied DCS for the Kim Ct. Project, less credits, is $9,279.53 ("Kim Ct. Materials"). (Request for Admissions, Ex. A, ¶ 11.)

38. DCS was paid in full for the Kim Ct. Materials. (Request for Admissions, Ex. A, ¶ 14.)

39. Vieregger made the decision not to pay ABC for the Kim Ct. Materials. (Request for Admissions, Ex. A, ¶ 15.)

40. Neither DCS nor Vieregger maintained a separate record of account for the Kim Ct. Project. (Request for Admissions, Ex. A, ¶ 16.)

<u>5959 S. Humbolt Ct.</u>

41. ABC was DCS's sole supplier of roofing materials and fixtures for improvements made to 5959 S. Humboldt Ct., Centennial, CO 80121 ("Humbolt Project""). (Request for Admissions, Ex. A, ¶ 18.)

42. In January and February 2009, DCS ordered and received materials listed on the following invoices:

    | | <u>Invoice #</u> | <u>Amount</u> | <u>Ship To</u> |
    |---|---|---|---|
    | a. | 4881821 | $9,504.18 | 5959 S. Humboldt Ct., Centennial, CO 80121 |

    (Request for Admissions, Ex. A, ¶ 17.)

43. In February 2009, ABC applied the following credit to DCS's account related to the Kim Ct. Project:

    | | <u>Invoice #</u> | <u>Amount</u> | <u>Ship To</u> |
    |---|---|---|---|
    | a. | 4883661 | - $248.83 | 5959 S. Humboldt Ct., Centennial, CO 80121 |

    (Request for Admissions, Ex. A, ¶ 17.)

44. The amount of materials that ABC supplied DCS for the Humbolt Project, less credits, is $9,255.35 ("Humbolt Materials"). (Request for Admissions, Ex. A, ¶ 17.)

45. DCS was paid in full for the Humbolt Materials. (Request for Admissions, Ex. A, ¶ 19.)

46. Vieregger made the decision not to pay ABC for the Humbolt Materials. (Request for Admissions, Ex. A, ¶ 20.)

47. Neither DCS nor Vieregger maintained a separate record of account for the Humbolt Project. (Request for Admissions, Ex. A, ¶ 21.)

**ELEMENTS OF CLAIM**

<u>Exception to Discharge, Pursuant to 11 U.S.C. § 523(a)(4)</u>

48. A creditor, seeking an exception to a debtor's discharge, based on a debtor's fraud or

defalcation, must seek relief under 11 U.S.C. § 523(a)(4). Section 523(a)(4) states that "a discharge under section 727...of this title does not discharge an individual debtor from any debt...for fraud or defalcation while acting in a fiduciary capacity..." 11 U.S.C. § 523(a)(4).

49. A creditor seeking relief pursuant to § 523(a)(4) must prove the following: "(1) the existence of a technical trust; (2) that the debtor owed a fiduciary duty arising from the trust; and (3) that the debtor breached the fiduciary duty by defalcation." *In re Gamboa*, 400 B.R. 784, 789 (Bankr. D. Colo. 2008) (*citing Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371-72 (10th Cir. 1996)).

Existence of a Technical Trust

50. In order to avail itself of 11 U.S.C. § 523(a)(4), a creditor must show . . . the existence of a technical trust. *Id.*

51. Colo. Rev. Stat. § 38-22-127, known as the Colorado Mechanic's Lien Trust Fund Statute ("the Trust Fund Statute"), creates an express or technical trust under which a debtor owes a creditor a fiduciary duty, as required by section 523(a)(4). *In re Regan*, 477 F.3d 1209, 1211 (10th Cir. 2007).

Applicability of the Trust Fund Statute

52. In order for a creditor to avail itself of the Trust Fund Statute, the creditor must show (1) it is a subcontractor, laborer or material supplier (2) who has a lien or may have a lien against the property, and (3) funds must have been disbursed to the debtor, which should have been held in trust. Colo. Rev. Stat. § 38-22-127(1).

Fiduciary Duty Arising from the Trust

53. In order to avail itself of 11 U.S.C. § 523(a)(4), a creditor must show, after proving the existence and applicability of a technical trust, that the debtor owed the creditor a fiduciary duty under the technical trust. *In re Gamboa*, 400 B.R. at 789.

Breach of Fiduciary Duty by Defalcation

54. In order to avail itself of 11 U.S.C. § 523(a)(4), a creditor must show, after proving the existence and applicability of a technical trust and that debtor owed the creditor a fiduciary duty under the technical trust, that the debtor breached its fiduciary duty by defalcation. *Id.*

Personal Liability under the Trust Fund Statute

55. A creditor seeking personal liability against the officer of a corporation, pursuant to the Trust Fund Statute, must show that said officer "controlled the entity's finances and actually

engaged in conduct constituting the statutory breach of trust." *In re Walker*, 315 B.R. 595, 598 (Bankr. D. Colo. 2005), *rev'd in part on other grounds*, 325 B.R. 598 (D. Colo. 2005).

<u>Treble Damages under the Trust Fund Statute</u>

56. A creditor seeking treble damages against a debtor, pursuant to the Trust Fund Statute, must prove the elements of Colo. Rev. Stat. § 18-4-401, i.e. criminal theft. *In re Powell*, 2008 WL 4489179, *4 (D. Colo. 2008). Colo. Rev. Stat. § 18-4-401 sets the following elements:

> (1) A person commits theft when he knowingly obtains or exercises control over any thing of value of another without authorization, or by threat or deception, and;
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
>
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
>
> (c) Uses, conceals, or abandons the thing of value intending that such use, concealment or abandonment will deprive the other person permanently of its use and benefit; or
>
> (d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

## BURDEN OF PROOF

<u>11 U.S.C. § 523(a)(4)</u>

57. A creditor seeking an order holding that a debtor's debt is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4), must prove its claim by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (U.S. 1991).

<u>The Trust Fund Statute</u>

58. State law determines the burden of proof a creditor must satisfy to establish a valid claim against a bankrupt estate. *Grogan v. Garner*, 498 U.S. 279, 286 (U.S. 1991).

59. Creditors have the burden of going forward by showing that they have unpaid invoices for labor or materials supplied to a project, on which the debtor has received payment. *In re Gamboa*, 400 B.R. at 790.

60. Once creditors have met this burden, the debtor has the burden of showing that all funds

received by debtor for work on a property were used to pay laborers on and suppliers to the property. *Id.*

Treble Damages under the Trust Fund Statute

61. A creditor seeking treble damages from a debtor is required to prove the elements required for such damages by a preponderance of evidence. *In re Dorland*, 374 B.R. 765, 776-77 (Bankr. D. Colo. 2007).

## ARGUMENT AND LEGAL AUTHORITIES

62. It is undisputed that that: 1)ABC provided roofing and construction materials to DCS, all as described above; 2) for whom Defendant Vieregger was an officer; 3), for which DCS was subsequently fully paid, and 4) DCS, then, withheld funds from ABC, based on the absolute discretion of Vieregger, DCS's sole officer and director. (Answer, Ex. B, ¶ 9.) *See also* (Request for Admissions, Ex. A, ¶ 1 to 21.)

Vieregger's debt to ABC should not be discharged, pursuant to 11 U.S.C. § 523(a)(4)

63. A debtor is not discharged from any debt for defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). ABC's claim seeking an exception to the discharge of Vieregger's debt meets the requirements imposed by section 523(a)(4).

The Colorado Trust Fund Statute is a technical trust

64. The Trust Fund Statute creates an express or technical trust under which a debtor owes a creditor a fiduciary duty, as required by section 523(a)(4). *In re Regan*, 311 B.R. at 275

The Trust Fund Statute is applicable in this matter

65. Colo. Rev. Stat. § 38-22-127(1) states as follows:

> (1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

66. ABC is a material supplier who could have liens against properties for which it supplied materials to DCS as described herein, and funds were disbursed to DCS which should have been held in trust for ABC, all as provided for in Colo. Rev. Stat. § 38-22-127(1).

67. In Colorado, pursuant to Colo. Rev. Stat. § 38-22-101, the following persons may have a lien against property:

> Every person who furnishes or supplies laborers, machinery, tools, or equipment in the prosecution of the work, and mechanics, materialmen, contractors, subcontractors, builders, and all persons of every class performing labor upon or furnishing directly to the owner or persons furnishing labor, laborers, or materials to be used in construction, alteration, improvement, addition to, or repair, either in whole or in part, of any building...who have rendered other professional or skilled service, or bestowed labor in whole or in part, describing or illustrating, or superintending such structure, or work done or to be done, or any part connected therewith...

68. A creditor may have a lien against a property if it is a laborer or material supplier who added value to that property. *In re Regan*, 151 P.3d at 1284-85. The procedural requirements for mechanic's liens in Colorado "do not apply to claims against money held in trust under section 38-22-127." *Id.* Thus, a creditor "may have a lien" even though the creditor never had a perfected mechanic's lien. *Id.*

69. It is undisputed that ABC furnished a total of $26,988.20 worth of materials to the Penwood Project, $9,279.53 worth of materials to the Kim Ct. Project, and $9,255.35 worth of materials to the Humboldt Project.

70. ABC, as a material supplier, added value of $45,523.08 to these three properties, and, therefore, ABC had a right to mechanic's liens against each of these properties.

71. Funds were undisputedly disbursed to DCS that should have been held in trust for ABC, as required by Colo. Rev. Stat. § 38-22-127(1).

72. It is undisputed that DCS was paid in full for the Penwood, Kim, and Humbolt Materials.

73. A technical trust in favor of ABC existed as contemplated by 11 U.S.C. § 523(a)(4).

<u>The Trust Fund Statute imposes a fiduciary duty</u>

74. The Trust Fund Statute imposed a fiduciary duty on DCS. *In re Gamboa*, 400 B.R. at 789.

75. Under the Colorado Trust Fund, a debtor has a fiduciary duty to withhold funds for the benefit of material suppliers who supplied materials to a project on which the debtor received payment. *Id.*

<u>Breach of Fiduciary Duty by Defalcation</u>

76. DCS breached its fiduciary duty to ABC by defalcation, as described in *In re Gamboa*. 400 B.R. at 784.

77. A debtor breaches its fiduciary duty by defalcation when it fails to account for funds entrusted to it. *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 287 (B.A.P. 10th Cir. 1997). A debtor's actions do not have to reach the level of "fraud, embezzlement, misappropriation, or larceny" to be considered a breach of fiduciary duty by defalcation. *Id.*

78. DCS breached its fiduciary duty to ABC by defalcation because it failed to account for funds entrusted to it. As noted above, DCS received payment on three projects.

79. It is undisputed that neither DCS nor Vieregger maintained a separate records of account for the work performed by DCS as described herein above. It is impossible for DCS or Vieregger to be able to account for the funds it received on any of the Penwood, Kim, or Humbolt Projects.

<u>Vieregger is personally liable under the Trust Fund Statute</u>

80. Under Colorado law, a corporation's officer is personally liable for violation of the Trust Fund Statute if the officer "controlled the entity's finances and actually engaged in conduct constituting the statutory breach of trust." *In re Walker*, 315 B.R. at 598.

81. It is undisputed that Vieregger was an officer of DCS.

82. It is undisputed that Vieregger controlled the entity's finances.

83. It is undisputed that Vieregger personally made the decision not to pay ABC for the Penwood, Kim Ct., and Humbolt Materials, and Vieregger both personally controlled DCS's finances and personally engaged in conduct constituting a breach of trust under the Trust Fund Statute.

84. Vieregger as a matter of law and in fact is personally liable for DCS's violation of the Trust Fund Statute.

<u>Vieregger is liable for treble damages, fees, and costs</u>

85. In Colorado, a violator of the Trust Fund Statute is liable for treble damages, fees, and costs when it is shown that the violator's acts met the elements of criminal theft. *In re Powell*, 2008 WL 4489179, *4.

86. The Trust Fund Statute states, in relevant part, "[a]ny person who violates the provisions of

subsections (1) and (2) of this section commits theft, as defined in section 18-4-401, C.R.S." Colo. Rev. Stat. § 38-22-127(5).

87. Criminal theft is defined by Colo. Rev. Stat. § 18-4-401, as follows:

> (1) A person commits theft when he knowingly obtains or exercises control over any thing of value of another without authorization, or by threat or deception, and;...
>
>> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; ...

88. Colo. Rev. Stat. § 18-4-401(1)(b) has been interpreted to require a showing that debtor "be aware that his manner of using trust funds is practically certain to result in depriving another person of the use or benefit of the funds." *People v. Anderson,* 773 P.2d 542, 545 (Colo.1989).

89. However, a debtor's mental state at the time is irrelevant. *In re Gamboa,* 400 B.R. at 794 (Bankr. D. Colo. 2008).

90. In order to show that debtor's actions fell within Colo. Rev. Stat. § 18-4-401(1)(b), a creditor must only show that "...[d]ebtor's actions made it practically certain that the Plaintiffs would be deprived of the use of the trust funds." *In re Gamboa,* 400 B.R. at794-795 (Bankr. D. Colo. 2008).

91. The civil remedy for theft is set forth by Colo. Rev. Stat. § 18-4-405, which states in relevant part:

> All property obtained by theft ... shall be restored to the owner.... The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover ... *three times the amount of actual damages sustained by him ... and may also recover costs of the action and reasonable attorney fees....*(emphasis added)

92. It is undisputed that DCS received full payment funds for the Penwood, Kim Ct., and the Humbolt Project.

93. It is undisputed that Vieregger made the decision not to pay ABC for the Penwood, Kim Ct., and Humbolt Materials and that Vieregger made the decision not to pay ABC, making it "practically certain" that ABC would be deprived of the use of the trust funds.

94. Vieregger is liable to ABC in the base amount of $45,523.08, trebled to $136,569.24, plus interest from February 27, 2009 through September 20, 2010 on the base debt of $45,523.08 attorney fees of $16,476.00, and costs of $641.00. (Affidavit of Mick Walker; Ex. C; ¶¶ 4

and 5.)

## CONCLUSION

95. Vieregger breached his fiduciary duty to ABC by failing to hold funds in trust for ABC that he received for construction projects completed by DCS. Vieregger's debt to ABC should not be discharged as it was obtained by defalcation.

Wherefore, Plaintiff prays as follows:

A. That Judgment be entered in favor of Plaintiff/Creditor American Builders & Contractors Supply Co., Inc. in the amount of $45,523.08, trebled to $136,569.20, plus pre judgment interest from February 27, 2009 through September 20, 2010 on the base debt of $45,523.08, for a total of $5,687.27, costs of $641.00 and attorneys' fees of $16,476.00 and that interest was to accrue at eight percent (8%) ($9.98 per day) from October 1, 2010 until date of collection, plus Plaintiff's shall be entitled to all additional collection costs and reasonable attorney fees related thereto until so collected.

B. That the debt, in the amount of $45,52308, related to American Builders & Contractors Supply Co., Inc., enumerated on Debtor's Amended Schedule F filed in Case No. 10-11642-ABC is excepted from discharge; and,

C. That the federally mandated statutory stay regarding collection actions is hereby lifted.

Dated this 24th day of September, 2010.

Andersohn Law Office, PC

Nathan L. Andersohn, Esq., Reg. #12000
Mick Walker, Esq., Reg. # 30560
11971 Quay Street, Broomfield, Colorado 80020
Phone: 720.303.8691;303.650.6414, Fax: 303.429.7574
E-mail: nandersohnlaw@yahoo.com
Attorney for Creditor/Plaintiff

| | |
|---|---|
| In re: Thomas H. Vieregger<br>American Builders & Contractors<br>Supply Co., Inc. v. Thomas H. Vieregger | Case No. 10-11642-ABC<br>Adversary Proceeding No. 10-1243-ABC |

**CERTIFICATE OF SERVICE**

I, Christian Webert, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of these **PLAINTIFF'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**  was made September 24, 2010 by:

   Mail Service: Regular, first class United States mail, postage prepaid, addressed to:

F. Kelly Smith, Esq.
216 16th St., Ste. 1210
Denver, CO 80202

Under penalty of perjury, I declare that the following is true and correct:


September 24 , 2010                                                               _____
Date                                                                                              Signature



Nathan L. Andersohn, Esq.
11971 Quay Street
Broomfield, Colorado  80020
Phone: 303.650.6414
Fax: 303.429.7574
e-mail:  nandersohnlaw@yahoo.com
Attorney for Creditor/Plaintiff
